v. Connecticut Department of Social Services, case number 24833. Is Mr. Lebron on Zoom? Hi, Mr. Lebron. Hold on one second. Thank you for your patience, Mr. Lebron. You have three minutes, but you've also, I believe, reserved two minutes for rebuttal. So please proceed. And if you can't hear us let us know. I can hear you, sir. Thank you, Your Honor. Your Honor, the reason I'm here today is to fight my case regarding this discrimination case against the Department of Social Services. I've submitted multiple documents that are true and what I want to speak to right now. Like I said in my documents, the manager that was hired lied on her application and was still The hiring manager lied multiple times during her thing saying that this individual spent 50% of her time on this thing they call value-based payments where, I say 50%, and to this day they have not launched any no value-based programs. I'm not sure what this person is doing with value-based programs. The other individual, Mr. Gilbert, he's a CFO of, he was a CFO of the agency. He, multiple times he first, he said that he, they created the questions for the hiring of this, for this position. It was a panel decision that went and when questioned, I sent a letter to, I mean, I sent an email to HR asking if that was true and they said that's, that that was not, that was a false statement that the hiring manager is the one that, that does the questions, not Mr. Gilbert, not the panel. Mr. Gilbert also mentioned I, in my testimony, I, he, he mentioned physician payments for, that physicians were paid more than hospitals, which he knows, for him being a CFO, that that's, that's, that's another lie with regards to, because our, the state of Connecticut physician rates are, right, currently are down about 60, 70% of the business payments are based on 57% of the 2007 Medicare rates. And I've had affidavits from, from a manager that was there that said, that validated my thing about the questions created by the panel when he said, no, they're created by the manager. I submitted documents regarding audits, two audit findings that, that were, were found against this, this, this agency regarding this individual being promoted nearly twice, not once, twice. Ms. McEvoy, which is the defendant, was, was, she resigned due to this, and the only reason I say this is because she, she, you know. Mr. Devon, you're, you're breaking up, so we, we're having a little... Accounting, I'm an accounting major working for... Okay, sorry. Maybe I speak a little slower. It makes, whatever. So you're... You're frozen. You know what we'll do is we'll hear from Ms. Wainwright. And then you have a couple minutes for rebuttal. Okay? Is that fair? Okay, thank you. Yes, sir. Thank you. May it please the Court, I am Stephanie Wainwright, Assistant Attorney General, and I represent the Defendant Appellee, State of Connecticut, Department of Social Services. The Court should affirm the District Court's granting of summary judgment for the defendant on plaintiff's claims of discrimination on the basis of race and gender under Title VII. The District Court properly granted summary judgment because plaintiff failed to present evidence as to pretext. The undisputed evidence was that Ms. Godburn, a white female, possessed superior qualifications. In specific, the value-based payment experience. That experience was an agency priority that had been designated before the job posting was presented and was in line with federal guidance as well. It is undisputed that Ms. Godburn had that experience, but plaintiff did not have that experience. That was the Department's legitimate non-discriminatory reason for its hiring decision, and plaintiff failed to present evidence as to pretext. Plaintiff points in general to an error on Ms. Godburn's application. He claims that Ms. Godburn essentially lied on her application, and that should have been disqualifying. In the first instance, there's no evidence that any of the decision-makers knew at the time of the hiring a decision about the error on the application. And ultimately, the error was harmless because Ms. Godburn possessed both the minimum qualifications and the preferred qualifications, which was the value-based payment experience. And there was no evidence that the error was intentional in any way, and there was no evidence... What did the error relate to? I'm sorry? What did the error relate to? The error was that Ms. Godburn, instead of separating out her experience at the Department of Social Services, she combined all of her experience. And so, instead of for one position, she was the fiscal administrative supervisor, I believe, for about 18 months, and a different position for about five years, and she combined all of that experience into one. It didn't negate the fact that she had this value-based payment experience. That's correct, and it did not affect her eligibility for the position at all. In terms of the audit, the district court properly concluded that Mr. — that, excuse me, that the plaintiff abandoned that claim. And plaintiff doesn't take that up in his appeal. Even if the court were to conclude that plaintiff didn't abandon the claims with respect to the in the first audit, the first audit had to do with a separate hiring decision that predated this hiring decision. And it was actually plaintiff who sat on the panel for that hiring decision, and he selected Ms. Godburn and another candidate. There was no evidence that the audit report found anything discriminatory about that hiring decision. The second audit had to do with a finding that the agency didn't appropriately vet all of the candidates. And that vetting applied — it was undisputed that that vetting, whatever the vetting process was, applied equally to plaintiff and to Ms. Godburn and to other hires within the department. And once again, there were no — there's no evidence of any discriminatory hiring practice that was found. In terms of the claims about lying, there was no evidence presented as to lying. The department presented evidence that Ms. Godburn did actually have the experience with value-based payment initiatives, that that was something that she was doing as the fiscal manager. In terms of discrepancies about who created the interview questions and who made the ultimate hiring decision, just because other people's experience on different hiring decisions was different from this particular experience doesn't mean that there was a discrepancy, and certainly doesn't mean that the discrepancy was discriminatory in any way. So in this hiring decision, the panel — there were three panelists, and they asked all of the interviewees the same questions. And the evidence was that they collaboratively made the questions, and they collaboratively arrived at a hiring decision. So once again, the same standards for this particular hiring decision were applying to the plaintiff and to the selected candidate, Ms. Godburn. Thank you very much. Thank you. Mr. LeBlanc? So in regards to Ms. Godburn lying on her application, there is a statement that Ms. Godburn acknowledges on the back of the application that literally says, if it's found to be that the person misrepresented her work history, that she can be terminated, suspended, and or terminated, which none have happened to her. With regards to the audits, the audits were, as they are, they're independent audits submitted by whoever — Ms. McAvoy no longer worked for the agency due to this, due to this promoting this individual twice. And like I've said in my testimony before, myself, when I was promoted to principal counsel — and by the way, it wasn't — she wasn't a fiscal administrative supervisor. She was a fiscal administrative officer, not a supervisor, before she became the manager. In regards to that, she actually put statements out there that she cited something from the government, and they didn't do anything with that as well. So for them to say that the audit had nothing to do with it, it actually had to. If Ms. Godburn had not lied on her application, she would have never got to the interview and whatever. That in itself is to say that this person should have been disqualified before she got to it. Ms. Godburn has, and I will say it anyway, because I've been — oh, and with regard to that, the value-based payments, before my time is up, Ms. Godburn was so intuitive in the value-based payments, she didn't even know if the value-based programs proposed by Ms. McAvoy said was — she was involved in — she doesn't even know it got paid in or outside the system. I have an email addressing that, but nobody ever looked at that, saying that she didn't — if she was so involved in this program, why didn't she know how all the payments were? Okay. Thank you very much, Mr. LeBron. So we'll reserve the decision, which just means that we're going to deliberate after this argument calendar is completed, and you'll have a written decision explaining our decision. Is that fair? Yes, sir. Thank you. Thank you very much for your time. Thank you, Ms. Wainwright, for that conclusion.